## Case No. 2,090.

BUCKINGHAM et al. v. JACKSON et al.

[4 Biss. 295.][1]

Circuit Court, D. Indiana. Feb. Term, 1869.

BILL FOR ACCOUNTING—INTERPRETATION OF CONTRACT.

A, B, and C were the owners of a tract of land. They entered into a written agreement

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

with J, in which it was stipulated that they sold him an undivided half of the land for $5,299.40, to be paid in four years; that J should pay half the taxes on the land; that he should subdivide and sell it in parcels; that he should deliver to A, B, and C the proceeds of said sales in payment of said $5,299.40 till the same was fully paid; and that afterwards the proceeds of such sales should go, one-half to J and the other to A, B, and C. Held, that till J had delivered over to A, B, and C double the amount of his said debt of $5.299.40, he could not claim a division with them of the proceeds of subsequent sales.

[In equity. Bill by James Buckingham and others against Andrew Jackson and others for an account. Decree for complainants.]

Porter, Harrison & Fishback, for complainants.

Walter March, for defendant Jackson.

McDONALD, District Judge. This is a bill in equity for an account founded on a written agreement concerning the purchase and sale of certain lands. The agreement is made an exhibit with the bill, and is as follows:

"Agreement made this 1st day of May, 1857, between Calvin Fletcher, Margaret McCarty, Susan McCarty, Margaret R. McCarty, and Francis J. McCarty, of the one part, and Andrew Jackson of the other part, witnesseth, that the party of the first part have sold to Andrew Jackson of the second part the undivided half of the following tracts of land: (Here the lands are described.) All supposed to contain, more or less, 249 40-100 acres (Andrew Jackson having heretofore taken by purchase fifty-hundredths for his mill-yard, and leaving the said 249 40-100 acres to the party of the first part), sell him the undivided half; and if the said Fletcher has heretofore, in laying off and selling lots in his addition to the town of Anderson, taken any portion off of said tracts, the same amount is to be taken off of his adjoining lots, so as to make up the full amount of the tracts above mentioned. For which undivided half, said Jackson is to pay the sum of $42.50 per acre in four years from date without interest. And said Jackson is to divide and sell the said lands in such portions as he and the said Fletcher may agree; and as fast as the same is sold, return the money to the parties of the first part, unless sold on a credit, which shall be on interest, and the interest annually paid by such purchasers; and that interest to inure to the benefit of the party of the first part, until the said Jackson, by sale, pays up the purchase money. Then, if there is a balance unsold, he shall have half the interest on the quantity of land left after paying up his purchase money. And as soon as moneys are paid by purchasers on time, the same shall go to and be handed over to the parties of the first part till the purchase money is, as aforesaid, paid by the said party of the second part for his undi-

vided half. Then, after that is so paid, the residue unpaid shall go with the interest, one-half to each party. Deed to be made to the said party of the second part when the purchase money on his part is paid, to all that remains unsold, or for which obligations are outstanding to convey to others; the said party of the second part to pay one-half of the present and future years' taxes and assessments on said land. His services for sales are not to be accounted; but for extra expenses in laying off, in obtaining the services of a surveyor, and for all necessary traveling expenses, he is to be paid. He is to keep an account of all sales, moneys, &c., in the disposal of the lands, and to have an oversight of the same to prevent trespasses, as far as possible—is to receive and collect the notes given by the Kirbeys, and that sale to be considered as his own sale, and will be so accounted in the final settlement of this concern. It is understood that said Calvin Fletcher and Nicholas McCarty's heirs hold the foregoing tract of land in partnership with Solomon Sturges and Alva Buckingham, and are to account to them for the same. Said Jackson has this day given his note for the purchase money in accordance with this agreement. As witness the hands and seals, day and year first written. P. S. After the said party of the second part has paid the purchase money as above, he is to have a reasonable compensation, for his services in settling and collecting, out of the profits." (Signed.)

The cause has been put at issue by answers, a cross-bill, and replications; and it is now submitted for final hearing and decree. And the parties agree in open court that the final decree shall depend on the construction of the written agreement above copied. By the parties on one side it is contended that said agreement must be construed to mean that as soon as Jackson, by the sale of these lands, obtained and paid over to the party of the first part ten thousand five hundred and ninety-eight dollars and eighty cents undivided, that is to say, double the amount which he engaged to pay for an individual half of the lands,—then, after deducting his costs and expenses from the gross amount of all subsequent sales, the residue should be equally divided between the parties to the written agreement. On the contrary, Jackson insists that the agreement ought to be construed as meaning that whenever, by sales of the lands, he received and paid to the party of the first part five thousand two hundred and ninety-nine dollars and forty cents,—the amount which he engaged to pay for an undivided half of the lands,—then, after deducting his expenses from the gross amount of all subsequent sales, the residue should be equally divided between him and the other party to the agreement. And Jackson, on his part, and the other parties to this suit, agree in open court that if the court shall

construe said written agreement according to Jackson's interpretation of it, then a decree shall be rendered in his favor for one thousand dollars; but that if the court shall construe the agreement according to the interpretation insisted upon by the other parties to this suit, then a decree shall go against Jackson for two thousand dollars.

The written agreement in question is a very remarkable document. It was evidently got up most carelessly. Some words, plainly intended to be inserted in it, seem to have been inadvertently omitted. It is a good illustration of the observation of Blackstone, that "The law rarely hesitates in declaring its own meaning; but the judges are frequently puzzled to find out the meaning of others."

The primary rule in the interpretation of contracts is that they must be interpreted according to the intention of the parties. In seeking for that intention, we must give to every contract a reasonable construction. 2 Kent, Comm. 554. For it should not be presumed that the parties intended anything either senseless or absurd. In view of these rules, let us attempt to interpret the contract in question.

Some things in this contract are plain enough. It is plain enough that the parties to it intended a sale to Jackson of the undivided half of 249 40-100 acres of land, at forty-two dollars and fifty cents per acre, amounting in the aggregate, as they estimated it, to the sum of five thousand two hundred and ninety-nine dollars and forty cents; and that he executed his note for that sum, payable four years after date without interest. Furthermore, it is very clear from the terms of the contract that to the other parties Jackson should pay that sum. How he should pay it, is therefore the only question of any difficulty. Now, the written contract attempts to show, and I think does show, how he was to pay it. The contract plainly shows that Jackson was made the agent of all the parties to divide into parcels all the land held in common by them, and to sell and receive the pay for the same. The contract also plainly requires that all moneys so received by Jackson—whether on sales for cash down, or on principal or interest on sales on credit—shall be paid over to the other parties to the contract, "till the purchase money is * * paid" by Jackson, arising on his purchase. This is clearly meant. Now, it should be noted, that the contract does not say that all the moneys so to be received by Jackson, shall be delivered to the other parties in satisfaction of his debt to them, but only that he shall continue so to deliver these moneys till his debt to them is paid. How much of this money, then, would he have to pay over to them in order to extinguish his debt? That would depend on the rights of the different parties to this money. If it all belonged to Jackson, he would only have to deliver over to them

the amount called for in the note—five thousand two hundred and ninety-nine dollars and forty cents. But did it all belong to him? It is the proceeds of land held in common and undivided by all the parties, in which Jackson held—at least equitably—one undivided half, and the other parties a like interest. Then only one-half of this money belonged to Jackson; and the other half to the other parties to the contract. How then could he pay his own debt with their money? Could such an absurdity have been within the intention of the contracting parties? The construction insisted on by Jackson involves this absurdity. I repeat that every contract must receive a reasonable interpretation. His interpretation I think is not reasonable; and I cannot adopt it. I think that there is no violence done to the words of the contract in construing it to mean that Jackson should continue to hand over to the other parties to the contract all the money he should receive on the sales which he engaged to make, till his half of it should be sufficient to pay the debt of five thousand two hundred and ninety-nine dollars and forty cents which he promised to pay. And I suppose this is the true construction of the contract in question.

It has been suggested, however, on the part of Jackson, that this contract, when all its provisions are duly considered, does not amount to a sale to him of any part of the land in question; that a suit could not be maintained on the note he executed; and that the whole thing amounts to no more than a special contract having in view a speculation in land. This suggestion may be right; but I do not perceive how it can help Mr. Jackson. I think it would make the case one of partnership. But whether it would or not, the substance of the matter would be this: The parties agree to enter upon a speculation in the sale of lands. All of them, except Jackson, put into the concern some ten or twelve thousand dollars' worth of land to be used in the speculation. Jackson puts in nothing; he only engages to pay half the taxes on the land, and to perform some services relating to the sale of it, and to pay the other parties five thousand two hundred and ninety-nine dollars and forty cents. And this money he engages to pay them out of the proceeds of sales of these lands. All this seems plain enough. But then the question recurs, Was he to pay this sum of money out of his share of the proceeds of these sales, or out of the whole of those proceeds? This is exactly the same question which meets us if we regard the case as a contract to sell an undivided half of the land to Jackson. Indeed, whatever view we take of the written agreement in question, we cannot escape the inquiry, Was Jackson to pay his debt of five thousand two hundred and ninety-nine dollars and forty cents out of his share of the proceeds of sales? I hold that this question must be answered in the affirmative. It was his debt; and his money ought to have paid it. This interpretation is not inconsistent with the words of the contract, and it escapes the absurdity of supposing the intention of the parties to have been that Jackson was to pay one-half of his debt with his creditors' money.

There is proof in this case to the effect that, at the date of the contract, the land in question was only worth from thirty-two dollars and fifty cents to thirty-five dollars per acre. And it is argued that as it is put down at forty-two dollars and fifty cents in the written agreement, this disparity ought to be considered in interpreting the contract. This disparity, however, will not be deemed very considerable when we remember that Jackson's purchase of the land was on a credit of four years, without interest. But suppose, on the other hand, that Jackson's interpretation of the contract is right, he would then pay his debt of five thousand two hundred and ninety-nine dollars and forty cents with two thousand six hundred and forty-nine dollars and seventy cents of his own money. This would be all he really would pay for his undivided half of the land; for it is idle to speak of paying a debt to a creditor with his own money. It follows, therefore, that, on Jackson's interpretation of the contract, he would only pay twenty-one dollars and twenty-five cents per acre for the land. And this, certainly, would be farther below the value of the land, than forty-two dollars and fifty cents would be above it. It appears to me, consequently, that the evidence of the value of the land, so far from aiding Mr. Jackson, is rather against him.

On consideration of the whole matter, I entertain no doubt touching the proper interpretation of the contract under consideration. And I decree in favor of the complainants and against the defendant Andrew Jackson, two thousand dollars.