[No. 11571.   Department Two. — October 28, 1886.]

# L. W. HILLIKER, RESPONDENT, v. H. KUHN, AP-PELLANT.

PLEDGE — DELIVERY — CONTINUOUS CHANGE OF POSSESSION — PLEDGOR AS-SISTING IN CARE OF PROPERTY. — After personal property has been pledged, and the possession thereof delivered to a pledge-holder, the mere fact that the pledgor, either with or without the knowledge or con-sent of the pledgee, for a time assists the pledge-holder in taking charge of the property, does not necessarily render the holding of it as a pledge void as to creditors of the pledgor. In such a case, there is a sufficient delivery and continuous change of possession to preserve the lien of the pledgee.

APPEAL from an order of the Superior Court of Yolo County refusing a new trial.

The facts are stated in the opinion.

*George P. Harding,* and *J. W. Goin,* for Appellant.

The pledge was not accompanied by a continuous change of possession sufficient to preserve the lien of the pledgee against the creditors of the pledgor. (*Grum* v. *Barney,* 55 Cal. 254; *Bell* v. *McClellan,* 67 Cal. 283; *Stevins* v. *Irwin,* 15 Cal. 503; Civ. Code, secs. 2988, 3440; *Godchaux* v. *Mulford,* 26 Cal. 317.)

*C. P. Sprague,* and *F. E. Baker,* for Respondent.

The delivery and change of possession were sufficient. (*Woods* v. *Bugbey,* 29 Cal. 466; *Goldstein* v. *Nunan,* 66 Cal. 542; *O'Gary* v. *Lowery,* 5 Mont. 427; *Macomber* v. *Parker,* 14 Pick. 497; *Palmtag* v. *Doutrick,* 59 Cal. 154; *Stevins* v. *Irwin,* 15 Cal. 503; *Montgomery* v. *Hunt,* 5 Cal. 366; *Cartwright* v. *Phœnix,* 7 Cal. 281; *Walden* v. *Murdock,* 23 Cal. 540; S. C., 83 Am. Dec. 135; *Godchaux* v. *Mulford,* 26 Cal. 317.)

FOOTE, C. — Hilliker brought an action against Kuhn, as constable, claiming that the latter was unlawfully

about to sell under execution, upon judgments obtained against one Locke, certain property which the plaintiff claimed to have had in the possession of a pledge-holder, to secure an indebtedness due from Locke to him, the plaintiff.

He prayed for a perpetual injunction to restrain Kuhn from selling said property, and for damages. He obtained judgment enjoining its sale, and for costs.

From an order denying his motion for a new trial the defendant has appealed.

He claims that the evidence was not sufficient to sustain the findings. There was certainly some conflict in the evidence, but for that reason alone the findings should not be disturbed. They are as follows:—

"That all the allegations contained in the complaint are true, except,—

"1. The allegation that plaintiff is the legal owner of the property described therein is not true, and in relation thereto the court finds that one H. F. Locke, the person named in said complaint as pledgor, was at all times mentioned therein the owner of said property.

"2. The allegation thereof, that prior to the commencement of said action plaintiff had been damaged by the acts and threatened acts of defendant in the sum of fifty dollars, and in the further sum of two hundred and fifty dollars, expenses incurred for counsel fees, is not true.

" The allegation in the answer, that on June 18, 1884, said Locke was in the actual possession of all said property, and that he thereafter continued at all times in such possession of all of said property until the same was seized by defendant and taken possession of by him under and by virtue of attachments issued in the suits referred to in said answer, is not true; nor is it true that Locke had possession of any of said property during any of said time.

"That the allegation in said answer, that the persons

designated as creditors in said actions were creditors of said Locke while he was in possession of the property described in the amended complaint, is not true.

"It was stipulated and agreed by defendant on the trial of this cause, that if there was such a delivery of the property described in said complaint to the plaintiff or to the pledge-holder to hold for the security of plaintiff's debt against Locke, and such a continuous possession by plaintiff or his pledge-holder as the law requires, in order to preserve the lien of a pledgee of personal property as against the creditors of the pledgor, then in that case plaintiff is entitled to a decree making the injunction perpetual.

"In reference to the alleged delivery to, and subsequent possession of, said personal property by the plaintiff, the court finds the following to be the facts, to wit: In August, 1883, plaintiff loaned H. F. Locke the sum of four hundred dollars, taking his note therefor, due, with interest, six months after date.

"That at the time of such loan and execution of said note, said Locke, being the owner and in possession of said personal property, delivered the whole thereof to plaintiff to secure the payment of said note.

"That plaintiff thereupon took possession of said property and deposited it in his own name in a warehouse in the town of Woodland, in said county, taking the warehouseman's receipt therefor.

"That the delivery of said property and change of possession from Locke to Hilliker, the plaintiff herein, was open and notorious, and plaintiff kept the same continuously in his exclusive possession in said warehouse until the nineteenth day of June, 1884.

"That at the date last aforesaid, at the request of said Locke, plaintiff loaned him a further sum of money, which, added to the amount then due upon said note, increased the indebtedness of Locke to plaintiff to the sum of $761.75.

"That at the time of such subsequent loan, said Locke proposed to plaintiff that said property, which consisted of a thrashing-machine, engine, and thrashing outfit, should be run during the thrashing season of 1884, then about to commence, and to induce plaintiff to consent that said property be used during said thrashing season, represented to him that he (Locke) would furnish the labor and supplies necessary to run the machine, and do the work of looking up jobs of thrashing, and notify the person in charge of said property of the place where such jobs were engaged.

"The court further finds that to enable said Locke to pay his debt without a sale of said property, the plaintiff, upon the aforesaid representation of Locke, entered into an additional agreement in writing with him, by the terms of which plaintiff and Locke agreed to appoint and did appoint one W. S. Lafferty to take possession of said property as a pledge-holder, and to hold the same in his exclusive possession in pledge to secure the indebtedness of Locke to plaintiff until such indebtedness was paid, the plaintiff, however, reserving the right to retake the property from such pledge-holder at any time.

"It was further agreed by the terms of said writing between plaintiff Locke and said pledge-holder, that said pledge-holder should take exclusive charge of said property; that he should run and operate the same during the thrashing season until Locke's debt to plaintiff was fully paid from the earnings thereof, unless plaintiff should exercise his right to retake said property prior to such payment, and pay to plaintiff the net earnings of said machine until his debt and interest were fully paid.

"That, pursuant to said agreement, said plaintiff, on the nineteenth day of June, 1884, delivered all of said property to said W. S. Lafferty, the pledge-holder aforesaid, who took and held the same, and thereafter, on the

twelfth day of July, 1884, commenced thrashing, said Locke having furnished him necessary laborers to assist in running said machinery, and said Lafferty continued to run and operate said machinery, and in the possession thereof, until the eighteenth day of August, 1884.

"That during the time said Lafferty was running said machinery Locke was frequently at the places where the same was being run, and from his observations concluded that said Lafferty was not sufficiently experienced to manage and run said machinery successfully; whereupon, on occasions when said Locke was present at the places where said machinery was being run, he frequently assisted said Lafferty in moving and setting said machinery, and by directions and advice as to the details of managing the same.

"That plaintiff resides at a distance from the places where said machinery was being run, and had no knowledge of such or any interference on the part of Locke.

"That about the eighteenth day of August, 1884, Locke reported to plaintiff that the pledge-holder, Lafferty, was not, in his judgment, sufficiently experienced to operate said machinery successfully; whereupon plaintiff and said Locke appointed one A. B. Nordyke to take the possession of said property, and to hold and run the same, pursuant to the agreement between plaintiff and Locke when Lafferty was appointed pledge-holder.

"That at the date last mentioned Nordyke went to the machine, when Lafferty there delivered to him the possession of all the property described in the complaint, and said Nordyke took the same as pledge-holder, and run and used the same in thrashing grain during the balance of the time the same was so used, to wit, until the ninth day of September, 1884; and during the time said Nordyke had the same in possession, said Locke exercised no control in the details of moving or running and operating said machinery, the said Nordyke having the exclu-

sive management thereof, and the control and direction of all laborers employed about the same.

"That he notified the persons with whom he transacted business that he was in possession of said property as pledge-holder.

"That at the date last mentioned, September 9, 1884, a portion of the laborers who were employed to work about said machinery forcibly took the same from said Nordyke and hauled it from the field, where it was being used in thrashing, to a public highway contiguous thereto, commenced suits for wages alleged to be due them, and sued out attachments against the property of plaintiff and said Locke, which attachments were placed in the hands of defendant, and by him levied on the tenth day of September, 1884, by seizure of the property described in the complaint, and taking possession thereof, which suits were the same referred to in the complaint as brought against plaintiff and said Locke.

"That while the property was so in the hands of said defendant, under said attachments, the judgment creditors referred to in the complaint — to satisfy whose judgment the property was about to be sold at the commencement of this action — began their actions against said Locke, and caused said property to be attached by defendant in their respective suits as the property of said Locke.

"That during all the time said property was in the hands of said pledge-holders, or either of them, there was no concealment or attempt at concealment on the part of plaintiff or said pledge-holders as to the *status* or condition of said property.

"That while the property was so in the hands of said pledge-holders, plaintiff told, among other persons, some of the judgment creditors mentioned in said complaint that the same was being held in pledge to secure Locke's debt to him.

"That said Locke on one occasion, a short time prior

to the levy of said attachments, told one of his creditors (not one of the judgment creditors mentioned in the complaint) that said property had not been pledged by him, but that such statement was false and made without the knowledge or assent of plaintiff and in his absence, and that plaintiff did not know until after the commencement of the suits and the attachment by the judgment creditors named in the complaint that said Locke had ever at any time made such a statement denying the pledge of said property.

"That the pledge-holder Nordyke was paid by plaintiff for his services as such pledge-holder at the rate of four dollars per day.

"That all the acts and transactions of plaintiff were open, fair, and were made and done in good faith.

"That the indebtedness of Locke to the said judgment creditors mentioned in the complaint was contracted subsequently to June 19, 1884."

The contention of the appellant that under the findings the plaintiff was not entitled to an injunction should not prevail, because in the first place it was stipulated between the parties in the court below upon the trial "that if there was such a delivery of the property described in said complaint to the plaintiff or to the pledge-holder to hold for the security of plaintiff's debt against Locke, and such a continuous possession by plaintiff or his pledge-holder as the law requires in order to preserve the lien of a pledgee of personal property as against the creditors of the pledgor, then in that case plaintiff is entitled to a decree making the injunction perpetual." And because, secondly, the findings show that "the delivery and continuous change of possession required by law" were sufficient to entitle the plaintiff to preserve his lien aforesaid.

For the mere fact that Locke, after the delivery of possession to the pledge-holder, either with, or, as appears most probable, without, the knowledge or consent

of Hilliker, had for a time taken charge of the property in the manner he did, would not necessarily render the holding of it as a pledge void as to creditors (*Goldstein* v. *Nunan*, 66 Cal. 542); the same rule being applicable in such a case with regard to delivery and change of possession as that which is required on a sale of personal property.    (*Woods* v. *Bugbey*, 29 Cal. 466.)

The order should be affirmed.

SEARLS, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the order is affirmed.