FIRST NATIONAL BANK OF CHICAGO v. E. M. CAPERTON ET AL.

1. MORTGAGES. *Right of mortgagor. Consumptive use. Fraud on creditors.*

A mortgage, executed by a manufacturing company on its products, wherein is reserved to the mortgagor the right to keep, use and sell them in the usual course of business, is fraudulent as to the creditors of the mortgagor.

2. SAME. *Right of mortgagee. Seizure.*

Such a mortgage is not rendered valid by a provision that in case the mortgagor should sell the property, or any interest therein; that the mortgagee should take immediate possession for the purposes of the mortgage.

3. PLEDGE. *Possession.*

Possession of the property and good faith on the part of the pledgee are both necessary to constitute a valid pledge as against the rights of creditors of the pledgor.

FROM the chancery court of Coahoma county, first district. HON. A. H. LONGINO, Chancellor.

The American Cooperage Company, a corporation doing business at Friar's Point, in this state, borrowed $10,000 from Cyrus H. McCormick, and among other securities given for the loan, was a list of personal property, which was agreed to be pawned; whether this property was delivered so as to render the pledge valid was a controverted question in the case.

Afterwards the American Cooperage Company, being indebted to the First National Bank of Chicago, in the sum of $35,000, and contemplating further indebtedness to it, executed and delivered to the bank two mortgages, the two, in the opinion of the court, constituting or evidencing but one transaction, upon substantially all of the property of the cooperage company, the mortgagor, embracing the product of its manufacturing plant. One of the mortgages contained the following provisions: .

(1) " To have and to hold, all and singular the said goods and chattels unto the said mortgagee, its successors and assigns, to its and their sole use forever, and the mortgagor, as for itself and for its successors or assigns, does hereby covenant to and with the said mortgagee, its successors and assigns, that said mortgagor is lawfully possessed of said goods and chattels as of its own property, that the same are free from all incumbrance; that it will, and its successors and assigns shall, warrant and defend the same to it, said mortgagee, its successors and assigns, against the lawful claims and demands of all persons; provided, nevertheless, that if the said mortgagor, its successors or assigns, shall well and truly pay unto said mortgagee, its successors or assigns, any and all indebtedness now or hereafter existing, of any and every nature, of the party of the first part to the party of the second part; and, provided also, that it shall be lawful for the said mortgagor, its successors or assigns, to retain possession of the goods and chattels, and at its own expense to keep and use the same until its successors or

assigns shall make default in the payment of the said sum of money above specified, either in principal or interest, at the date or times and in the manner hereinbefore stated.

(2) "And the said mortgagor hereby covenants and agrees that in case the mortgagee, its successors or assigns, shall feel insecure or unsafe or shall fear diminution, removal or waste of said property, or if the mortgagor shall sell or assign, or attempt to sell or assign, the said goods and chattels, or any interest therein, or if any writ or any distress warrant shall be levied on said goods and chattels, or any part thereof, then, and in any or either of the aforesaid cases, said mortgagee, its successors or assigns, or any of them, shall thereupon have the right to take immediate possession of said property, and for that purpose may pursue the same wherever it may be found, and immediately enter on the premises of the mortgagor, with or without force or process of law wherever the said goods and chattels may be or be supposed to be, and search for the same, and, if found, to take possession of and remove and sell and dispose of the said property, or any part thereof, at public auction to the highest bidder, after giving three days' notice of the time, place, and terms of sale, together with a description of the property to be sold, by notices posted up in three public places in the vicinity of such sale, or at private sale, with or without notice, for cash or on credit as the said.mortgagee, its successors or assigns, agents or attorneys, or any of them, may elect; and out of the money arising from said sale to retain all costs and charges for pursuing, searching for, taking, removing, keeping, storing, advertising, and selling the said goods and chattels, and all prior liens thereon, together with the amount due and unpaid, rendering the overplus, if any remains, unto said mortgagor or its legal representatives."

E. M. Caperton and divers others, creditors, began suits upon their debts against the cooperage company, most of them suing in the circuit court, some in various justices' courts, and a few in the chancery court of the county. Judgments were obtained

by several of the creditors who had sued in justices' courts, and they had levies made under executions on the property, or a part of it, which was embraced in the mortgages. This being the condition of .affairs, the First National Bank of Chicago filed the bill in this cause, primarily to enforce its mortgages, but in aid thereof sought an injunction, and obtained a preliminary one, restraining levies on the property, and asked and obtained the appointment of a receiver to take charge of all the property and affairs of the cooperage company. Cyrus H. McCormick was, pending the cause, admitted as a party complainant to the suit, and he. asserted, by an amended bill, a prior claim on that part of the effects in the hands of the receiver, which he claimed as having been pledged to him as a security for his debt. Caperton and the other creditors, defendants to the suit, jointly answered the bill and the amended bill, and made their answer a cross bill, insisting that the mortgages were executed to defraud creditors and void, and that McCormick never took possession of the property which he claimed in pledge, and had no superior right, and prayed that the receiver be required first to pay them out of the proceeds of the property. The court below decreed the mortgages void, but adjudged McCormick's pledge valid. The First National Bank of Chicago, the original complainant, appealed, and Caperton and other creditors and original defendants, also appealed, complaining of the decree in so far as it was favorable to McCormick.

*D. A. Scott,* for appellant, the First National Bank of Chicago.

Upon a state of facts much stronger than the state of facts developed by the evidence in this record, the supreme court of this state has, on more than one occasion, refused to declare as fraudulent and void, either in law or in fact, mortgages conveying property consumable in its use. This, for the manifest reason (as we maintain in the case here), because the instruments

did not, in express and unequivocal language, reserve the right
in the mortgagor to sell the property; they did, however, con-
vey property consumable in its use, and expressly provided in
the face of the instruments that the mortgagor should have the
right to retain possession of the property and use it.   In one
of the cases the property conveyed was logs and lumber.   And,
in the instrument of writing under which these logs and lumber
were conveyed, there was a stipulation to the effect that the
mortgagor should retain possession of the property, and, in his
discretion, to use it, to convert it into lumber, and, yet, our
court very properly held that this instrument was not fraudu-
lent and void upon its face, because, as above stated, it did not,
in express and unequivocal language, reserve the right that the
mortgagor should have the authority to sell the property in
the usual course of trade.   Such being the law of this state
upon the subject as to whether a mortgage upon property
consumable in its use is fraudulent and void upon its face,
it follows, as a natural and legal sequence, that in order to
condemn such an instrument as fraudulent and void in fact,
there must be clear and undisputable proof that there was an
express agreement between the mortgagor and the mortgagee,
dehors the mortgage, by which the mortgagor was authorized
not only to use the property, but to sell it, convert it into
money, and use it in the usual course of his business.

The reason assigned by our court for not condemning the in-
strument considered in *Hitchler* v. *Bank*, 63 Miss., 403, was
because of the absence of an express agreement or authority
contained in the face of the mortgage, to sell or dispose of the
property therein described and conveyed.   Manifestly, the
property conveyed in that mortgage was as consumable in its
use as the property involved in this suit.   Chief Justice Cooper
says: '' The mortgage executed to secure the debt of Black is not
void merely because it includes the saw logs, which, from time
to time might be brought on the mortgaged premises.   There
is no authority reserved by the mortgagor to sell these logs, or

the lumber into which they might be converted. It would not be a violent presumption to indulge that such was the understanding of the parties, but it does not unmistakably appear that it was, and it is only where the reservation of such right is expressly reserved that the conveyance is to be declared void on its face. It does not appear by the evidence that any of the mortgaged property was, in fact, sold by the mortgagor, nor that there was any agreement in reference to it, other than that appearing in the deed.''

Chief Justice Cooper, in commenting upon the validity of another mortgage, says: ''The mortgage executed by Nalty, to secure the debt due to Britton & Mason, was not fraudulent on its face, for though it is strongly suggestive that it was contemplated by all parties to it that Nalty should continue to dispose of the goods mortgaged in the usual course of trade, there is no express reservation of that right. We cannot say that the power is so clearly reserved to sell the goods that no evidence negativing that right could be introduced. It is only where the conveyance so unmistakably reserves the right to the mortgagor to deal with the property mortgaged as his own that all evidence to the contrary should be excluded, as contradicting the writing, that the court can declare the deed fraudulent in law.'' *Britton & Mason* v. *Criswell*, 63 Miss., 394.

*Sam C. Cook*, for appellees, Caperton and others.

The mortgages provide in specific terms that the mortgagor '' shall keep and use '' the property conveyed. The property conveyed consisted of raw, partly manufactured, and manufactured cooperage material. This property was all consumable in its use, and '' to keep and use '' the same, destroyed the validity of the mortgage. *Acme Lumber Co.* v. *Hoyt*, 71 Miss., 106; *Harman* v. *Hoskins*, 56 Miss., 142. We could cite numerous Mississippi decisions announcing this doctrine, but the rule is too well established to require other citations.

It is contended that the provision in the mortgage whereby

a forfeiture thereof may be declared by the mortgagee in the event that the mortgagor should sell or dispose of the property conveyed, necessarily prohibits the sale of the same by the mortgagor. We do not think that this position is maintainable. All parts of the instrument should be taken in connection with other portions of the mortgage, in order that the same may be properly construed as a whole. Every provision of the mortgage must be given effect, and seemingly inharmonious provisions must be harmonized if possible.

We submit that the mortgage as a whole means that the mortgagor was authorized "to keep and use," to sell and dispose of, the property conveyed, in the ordinary course of its business; but should the mortgagor attempt to sell or dispose of the property, except in the ordinary course of its business, then the conditions would be broken, and the mortgagee was authorized to declare the same forfeited. Any other construction of the instrument would defeat one or the other of these seemingly conflicting powers.

*Cook & Yerger*, on the same side.

The provision in the chattel mortgage providing the mortgagor "may keep and use" the property conveyed, rendered both mortgages void as to creditors, they both being given to secure the same debt, contracted at the same·time, and, in the language of Mr. Gage, they are practically contemporaneous, and, therefore, one and the same instrument from a legal standpoint of construction. *Harmon* v. *Hoskins*, 56 Miss., 142. Admitting that the clause in the chattel mortgage, above referred to, does not necessarily imply that the mortgagor was to have the right to sell the property mortgaged, nevertheless, it is clear from the course of dealings between the parties, as disclosed by the depositions of Gage and Charnley, that this right was conferred upon the mortgagor or at least contemplated, and, in fact, tacitly agreed upon. The authorities are clear that a tacit agreement will bind the parties. *Hangen*

v. *Hachemeister*, 114 N. Y., 556; *Russell* v. *Winne*, 37 N. Y., 591.

J. W. *Cutrer*, on the same side.

The mortgages seem to us to be fraudulent (1) because of the fact that they seek to secure an indebtedness to the mortgagee then due, and which was definitely known, and yet failed to describe such indebtedness; (2) because the two instruments were contemporaneous, and are therefore one and the same, the chattel mortgage covering property which is consumable in its use, and, by express stipulation, the mortgagor is given the right to retain possession of such property, and to keep and use the same; (3) because, as a matter of fact, the mortgagor was permitted to use, sell, and dispose of the mortgaged property (which by the terms of the mortgage it was stipulated should remain in the mortgagor's possession) in the usual and ordinary conduct of its business. *Britton* v. *Criswell*, 63 Miss., 394; *Hitchler* v. *Bank*, 63 Miss., 403; *Acme Lumber Co.* v. *Hoyt*, 71 Miss., 106; *Harmon* v. *Hoskins*, 56 Miss., 142; *Joseph* v. *Levi*, 58 Miss., 843; *Bank of Hazelhurst* v. *Goodbar*, 73 Miss., 566.

J. W. *Cutrer*, for cross appellants, Caperton and others.

We contend (1) that there was no delivery of the possession of the property claimed originally to have been pledged to Haynes for McCormick; (2) if there was, Haynes was not a capable person to accept and hold possession of the property for McCormick, being one of the principal managing officers of the cooperage company; (3) that the contract of pledge itself is invalid, by reason of the agreement that the cooperage company was given the right, at will, to withdraw the pledged property and substitute other property in the place thereof, using the property so withdrawn in the ordinary conduct of the business and in the due course of trade. Jones on Pledges, secs. 23, 40; *Citizens' Bank* v. *Jennen*, 46 La. Ann., 995;

see, also, 17 So. Rep., 471; Jones on Pledges, secs. 23, 24; *Casey* v. *Caveroc*, 96 U. S., 464; *Sidenback* v. *Reily*, 111 ˙N. Y., 560; *Conrad* v. *Fisher*, 8 L. R. A., 147. ˙

*Edward O. Brown*, for appellee, McCormick.

We claim distinctly under a pledge. We claim that this pledge was made effective by the intention of the parties and their actions in pursuance thereof; that the merchandise, the proceeds of which have been given to us by the decree of the court below, was taken possession of in pursuance of the pledge to McCormick, through his agent, and that neither the fact that such agent was an officer of the corporation which pledged the goods, nor that in pursuance of his authorization a portion of the merchandise first pledged was redelivered to the pledgor in return for other stock of the same nature and value, should be held to invalidate the pledge. In support of our contention, we offer the following legal propositions and citations.

The essential elements of a pledge are transfer of possession to the pledgee and the right of the pledgor to redelivery on payment of the debt at any time before the power of sale has been exercised. The terms of the pledge may be such that the legal title passes to the pledgee. *Wilson* v. *Little*, 2 Comst., 443–447; 18 Am. & Eng. Enc. L., 588–590. It certainly cannot be necessary to press the proposition that, although a pledge requires a delivery of the property pledged to the pledgee, that delivery may be constructive. In the case of bulky articles inconvenient to move, it must almost always necessarily be so. No one would deny in these days, I presume, that the delivery of the key of a warehouse may be a constructive delivery of all the goods therein. And so logs in a boom are delivered by their merely being pointed out. A transfer of a warehouse receipt is delivery of goods pledged thereby. 18 Am. & Eng. Enc. L., 595, note 8; Jones on Pledges, sec. 36; *Jewett* v. *Warren*, 12 Mass., 300–302; *Wilkes* v. *Ferris*, 5 Johns., 335–344.

All the elements of a delivery of the property under discussion in this case appear. Had McCormick, instead of being approached for a loan, come to Friars' Point in search of cooperage stock, bought the property in question and requested Mr. Haynes to take and keep possession of it until he wanted to move it, soliciting and receiving a lease of the land upon which it stood and marking it McCormick upon the edge of the piles, there certainly could be no doubt that it had been segregated sufficiently to be absolutely and safely his property, and subject to his order. The same tests are applicable in the case of a pledge.

Where a sale, absolute in form, is made merely as security for a note, the bill of sale, being a mere bill of parcels, is subject to explanation by parol evidence. *Walker* v. *Staples*, 5 Allen, 34. Substantially to the same effect are *Beidler* v. *Crane*, 135 Ill., 92, 99; and *Benton* v. *Thornhill*, 7 Taunton, 149.

I cite these cases to a familiar proposition because there appear in the record objections by the appellants to the introduction of evidence to explain the bill of sale and the lease, and the nature of the contract between McCormick and the American Cooperage Company. The law in a case like this, where the note, the absolute bill of sale and the lease are contemporaneous, would not only allow, but demand, an explanation. Actual possession by the pledgor as bailee or agent of the pledgee, does not vitiate the pledge. *Reeves* v. *Capper*, 5 Bingham (N. C.), 136, 140; *Martin* v. *Reid*, 11 Common Bench (N. S.), 730, 734; *Thompson* v. *Smith*, 11 Hum., 396, 400; *Goldstein* v. *Nunan*, 66 Cal., 542; *Macomber* v. *Parker*, 14 Pickering, 497, 505, 508, 509; *Melody* v. *Chandler*, 3 Fairfield (12 Me.), 282.

Again, it is further to be noted that if actual possession is in the pledgee, while to all the world outside there is apparent possession in the pledgor, the pledge is not necessarily vitiated, nor subject to defeat by creditors. *Benton* v. *Thornhill*, 7 Taunton, 149; *Hilliker* v. *Kuhn*, 71 Cal., 214.

A pledgor may be employed by the pledgee to sell the pledged goods.  A valid pledge may be effected by delivery to an employe of the pledgor as agent of the pledgee, the goods being kept on the pledgor's premises, and portions of them being delivered to the pledgor, from time to time, on payment of the corresponding parts of the debt.  *Combs* v. *Tuchelt*, 24 Minn., 423, 426; *Weems* v. *The Delta Moss Co.*, 33 La., 973; *Jacquet* v. *Creditors*, 38 La., 863.   And not only, in such a case, may the pledge be effective when the goods are kept on the pledgor's premises in a separate room, they may be kept in the same room with other goods of the same kind belonging to the pledgor without invalidating the pledge.  And if, in pursuance of agreement, these goods are afterwards given up to the pledgor, and sold by him, other goods specifically appropriated in their stead by the employe of the pledgor, who acts as agent for the pledgee, come under the effect of the same pledge and cannot be subject to attachment by creditors of the pledgor, even though, at the time the conflicting attachment is levied, some of them are still unfinished.   *Sumner* v. *Hamlet*, 12 Pickering, 76, 81–83; *Allen* v. *Smith*, 10 Mass., 308; *Abbott* v. *Goodwin*, 20 Me., 408, 412; *New York Security & Trust Co.* v. *Lippman*, 36 N. Y. Sup., 355.

*D. A. Scott*, on same side.

As to what constitutes a sufficient delivery, under the law of pledges of personal property, in addition to the authorities cited by Mr. Brown, I refer to 18 Am. & Eng. Enc. L., 595, and notes.

If agreements fail, by reason of inadvertence or mistake, to express the true intent of the parties, courts of equity should and will grant relief.   *Hall* v. *Lafayette County*, 69 Miss., 529.

Whenever an instrument conveying property is intended as security, an equitable lien is established.   1 Story's Eq. Juris., sec. 1018; *Maynard* v. *Cocke*, 71 Miss., 493.

In case of debt a pledge is preferred to a mortgage, but con-

tracts will always be construed so as to effectuate the true intent of the parties.    18 Am. & Eng. Enc. L., 592, 598, and notes.

All instruments of writing should be so construed as, if possible, to sustain their validity.    The presumption of an attempt to defraud is not to be indulged.    The contrary is the legal intendment, which must prevail until it is overcome by reasonable certainty that the thing complained of is such as the law condemns.    *Mattison* v. *Judd,* 59 Miss., 99.

WHITFIELD, J., delivered the opinion of the court.

The mortgage of October 25, 1894, to the First National Bank, on its face reserves the right to the mortgagor to "keep and use" the property.    This avoided the instruments, both constituting one transaction.    *Acme Lumber Co.* v. *Hoyt,* 71 Miss., 106.    The property was largely consumable in its use. It is said that the subsequent provision that in case the mortgagor should sell or assign said property, or any interest therein, that the mortgagee should take immediate possession, etc., saves the instrument.    But the "use" first referred to clearly is the usual use in the ordinary course of business, and the latter provision relates to a selling out of the business, otherwise than at retail, in such ordinary course of business; and a clause providing for such selling out at retail, as usual (Jones on Chat. Mort., sec. 458, note 1), cannot be permitted.    It would operate a fraud on those who gave credit to the mortgagor on the faith of apparent ownership, serving the purpose of continuous cover.    The provisions invoked in *Hitchler* v. *Bank,* 63 Miss., 403; in *Britton* v. *Criswell, Id.,* 394; and in *Baldwin* v. *Little,* 64 Miss., 126, were all in the granting clause of the instruments in those cases, and not, as here and in Hoyt's case, *supra,* in the clause reserving control to the grantor.    The decree on the appeal of National Bank of Chicago against Caperton *et al.* is therefore affirmed, as the right result was reached.    As to the evidence, it is only necessary to say Charnley, the president of the American Cooperage Company,

said he expected to continue the business as usual, and that it very clearly shows that the grantor was selling out in the usual course of business, certainly up to October 30, though Gage says he did not know anything as to this, admitting, however, that the forbearance of the mortgagee doubtless permitted this to be done.

On the appeal of E. M. Caperton *et al.* against Cyrus H. McCormick we find ourselves, after repeated examinations of the record and of the many authorities cited, unable to concur with the learned chancellor.    The possession was too equivocal, looking to the constant substitutions and the whole evidence touching the character of the possession.    Jones on Pledges, sec. 40, *et seq.;* 18 Am. & Eng. Enc. L., 597, and note 4; *Nisbit* v. *Trust Co.,* 4 Woods, 470 (12 Fed. Rep., 686); *Trust Co.* v. *Trumbull,* 137 Ill., 146 (27 N. E., 24); *Casey* v. *Cavaroc,* 96 U. S., 467.    In this last case, as here, all the money arising from the sale of the originally deposited securities went to the bank, and not to the pledgee.    It may be conceded that McCormick acted in perfect good faith.    But the presence of good faith cannot supply the lack of the character of possession essential to the existence of a pledge.    As well said by Mr. Justice Bradley in the case last cited:  "Bad faith would defeat the pledge, though the creditor had possession.    But want of possession is equally fatal, though the parties may have acted in good faith.    Both are necessary to constitute a good pledge, so as to raise a privilege against third persons.    The requirement of possession is an inexorable rule of law, adopted to prevent fraud and deception; for, if the debtor remains in possession, the law presumes that those who deal with him do so on the faith of his being the unqualified owner of the goods."  The case of the Champagne Wines, cited by Justice Bradley (p. 484), is squarely in point here.    There was no substitution in the case of *Bank* v. *Harkness* (W. Va.), 24 S. E., 548. The case of *Abbott* v. *Goodwin,* 20 Me., 411, is in conflict with our decisions, unless the distinction that the proceeds of the

goods sold were to be paid to the mortgagee, and were so paid, distinguishes it; and that distinction cannot aid appellees, because here the proceeds went to the pledgor. In *Sumner* v. *Hamlet*, 12 Pick., 76, the strongest case learned counsel for the appellees has cited, it seems there was a new and independent arrangement and contract, both as to the debt and the pledge, made in October, 1829, and the forty-five pieces of flannel selected under the new contract were never substituted. In *Combs* v. *Tuchelt*, 24 Minn., 423, all the unstamped cigars which the pledgor got from Mann, the agent of the pledgee, were paid for, and the money paid to the pledgee, so that the lien of the pledge attached only to the unsold part, which was never substituted. In *Allen* v. *Smith*, 10 Mass., 308, the possession, designated by stakes and marks, was visible and notorious, and there was no substitution; and *Hilliker* v. *Kuhn*, 71 Cal., 214 (16 Pac., 707), merely holds that a mere temporary charge of the pledge by the pledgor, after delivery to the pledgee, to assist the pledge holder, does not invalidate the pledge. Of course, delivery may be according to the nature of the thing delivered—as, of the contents of a warehouse by delivery of the key or of a warehouse receipt, or as by delivery of bill of lading, or as by pointing out logs in a boom, etc. We are not speaking specially here of the mere delivery of the original material; but, on the whole evidence, it seems to us clear that the claim of Mr. McCormick cannot, under "the inexorable rule of law" as to the character of the possession, be upheld.

*The decree on the appeal of Caperton et al. against McCormick is therefore reversed, and the cause remanded for a decree below in accordance with this opinion.*