Thomson, J.
On the 1st day of March, 1897, Charles A. Estes executed his chattel mortgage to M. G. Palmer, Edwin P. Estes, and the Post Printing and Publishing Company, whereby, to secure an indebtedness from him to them, evidenced by certain promissory notes made by him, he transferred, assigned and sold to them a stock of merchandise, together with one safe and certain fixtures, furniture, counters and shelving; all the property so mortgaged being in the store-room of the mortgagor in the city of Denver. The mortgage was duly recorded immediately upon its execution. In his mortgage, the mortgagor covenanted and agreed that he would well and truly pay the notes which it described in accordance with their terms, and the instalments of interest as they should become due, and that he would, until full payment of the debt, keep the property insured against loss by fire in the sum of 110,000 for the benefit of the mortgagees. The mortgage also contained the following covenant: “ That until said indebtedness and every part thereof, and all interest aforesaid, shall be fully paid, said party of the first part, his heirs or legal representatives, will not sell or dispose of, or attempt to sell or dispose of the said property, goods or chattels, or any part thereof, without the written consent of the parties of the second part or their successors or assigns.” We find the following further provisions in the instrument: “ Now, Therefore, If the said party of the first part shall well and truly and promptly pay the aforesaid notes, and each and every one of them, when the same shall severally become due, without days of grace, and shall also well, truly and promptly pay each and every instalment of interest when the same shall become due and payable as aforesaid, and shall also well and truly abide by, keep and perform each and every of the aforesaid covenants and agreements, then these presents to be null and void, except as hereinafter provided, otherwise to remain in full force and effect. And it is hereby agreed, That, until default shall be made by the party of the first *528 part, his heirs or legal representatives, in the keeping or performance of some one or more of the conditions, covenants or agreements above herein or hereinafter mentioned, the said party of the first part may keep, retain and use the said property, goods and chattels.”
Shortly after the execution of this mortgage, the property which it described was levied upon, taken and sold by the sheriff, by virtue of executions issued upon judgments severally recovered against Charles A. Estes, by certain of the appellees, and by virtue of writs of attachment issued in suits severally instituted against the same party by certain other of the appellees. The mortgagees, Edwin P. Estes, Moses G. Palmer and the Post Printing and Publishing Company, brought this action against the appellees to recover damages for the seizure and sale of the property. The complaint set forth the mortgage in full, and alleged the indebtedness to the appellants, its nonpayment, the seizure and sale, and the value of the property. It also alleged that immediately upon the execution of the mortgage, the representative of the plaintiffs took possession of the property, and that it was in his possession when it was taken by the sheriff.
The defendants demurred to the complaint on the ground that it did not state a cause of action. Upon the overruling of their demurrer, they answered, denying certain allegations of the complaint, setting forth the proceedings in pursuance of which they severally caused the property to be seized, and averring that the purpose of the mortgagor in executing the mortgage, was to hinder and delay his creditors. When the jury were empanelled, and the plaintiffs were about to proceed with their case, the defendants objected to the introduction of any evidence, on the ground that the mortgage as set forth in the complaint, by reason of the provision which it contained allowing the mortgagor to keep, retain and use the property until default by him, was void as to creditors. The objection was overruled, and the trial proceeded. When the plaintiffs rested their case, the court, on motion, directed a verdict in favor of the defendants, which was returned ac *529 cordingly. Judgment followed the verdict. The plaintiffs bring the case to this court by writ of error.
As far as we are able to discover from the record, the various objections taken by the defendants, whether in the form of demurrer, motion, or otherwise, involve but one question; and certainly, the parties, by their briefs, have presented but one question to us. It is asserted by the defendants, and denied by the plaintiffs, that the agreement in this chattel mortgage permitting the mortgagor, until some default by him, to keep, retain and use the property, renders the mortgage void. It is settled in this state that a provision in a mortgage of a stock of merchandise, which authorizes the mortgagor to “ retain, use and enjoy,” or “retain and use,” the property mortgaged, invalidates the instrument as to creditors. Wilson v. Voight, 9 Colo. 614; Bracher v. Christophe, 10 Colo. 284; Harbison v. Tufts, 1 Colo. App. 140. In the case of a mortgage of chattels other than merchandise, those words would be harmless, because the use and enjoyment of such chattels would be consistent with their continued possession in the mortgagor. But the use which is ordinarily made of a stock of merchandise, is the sale, in due course of business, of the articles composing it; and giving the mortgagor the use and enjoyment of the stock, is, therefore, equivalent to giving him authority to sell it, and appropriate the proceeds to himself, and thus defraud his other creditors; In the cases to which we have referred, the covenant for the use and enjoyment of the property by the mortgagor, was not affected by any other provision in the instrument; and so, if in this mortgage there were nothing outside of the agreement in relation to the use of the property, by which the meaning of its language might be controlled, we should be compelled to hold that as against these defendants the plaintiffs took nothing by their mortgage.
The purpose of all rules for the construction of written instruments is the ascertainment of the intention of the parties to them; and, in general, in each instance, such intention must be deduced from the language found in the contract. *530 The writing must be considered as a whole; apparently inconsistent expressions must be harmonized if possible; if one portion serves to explain the meaning of another portion, it must be used for that purpose; and if the writing will admit of a construction which will make the whole and its several parts reasonable, such construction must be adopted, for it cannot be presumed that the parties intended their contract to be senseless or absurd. Stout v. Whitney, 12 Ill. 218; Barton v. Fitzgerald, 15 East, 530; City of Decorah v. Kesselmeier, 45 Ia. 166; Buckingham v. Jackson, 4 Biss. 295 ; Belch, Executrix v. Miller, 32 Mo. App. 387 ; Blitz v. Steamboat Co., 51 Mich. 558; Walker v. Tucker, 70 Ill. 527.
The instrument before us contains a covenant that until the entire indebtedness, including interest, should be paid, the mortgagor would not sell or dispose of, or attempt to sell or dispose of, any of the property mortgaged without the written consent of the mortgagees. Of course, the latter, by giving their consent, written or unwritten, to the sale of the property, or any part of it, by the mortgagor, for his own benefit, would have invalidated their mortgage as against other creditors. Wilcox v. Jackson, 7 Colo. 521; Wile v. Butler, 4 Colo. App. 154. If no such consent was ever given, the mortgagor was, at the time of the seizure of the goods by the sheriff, under an absolute prohibition against the sale by him of any part of the property. For the defendants, two propositions are advanced: first, that the provision of the mortgage authorizing the mortgagor, until default by him in the performance of his covenants, to retain and use the property, was the written consent which was contemplated in the covenant not to sell; and, second, that the permission to use the property was an authority to dispose of it in the usual course of trade, whereas, by the covenant not to sell, the parties simply proposed to guard against the sale of the property in any other manner; in other words, that it was the intention of the parties, that the mortgagor might sell in the ordinary course of business, but that he might not sell except in the ordi *531 nary course of business; so that the two provisions are in perfect harmony, and, construed together, render the mortgage fraudulent as to creditors.
1. We think the phraseology of the authority to use the property, furnishes a complete refutation of the first proposition. If that provision were disconnected from, and independent of, the covenant not to sell, counsel’s argument would be plausible, and, perhaps, conclusive. But the right to retain and use was contingent on the keeping by the mortgagor of all his covenants, including that against sale. As between the mortgagor and the mortgagee, that right could not be lost until default by the former in the keeping of some one or more of his covenants. A violation by him of any of his covenants would terminate the right. If he should sell the whole or any part of the mortgaged property, the privilege of retaining and using it, would cease. We are compelled to dissent from the proposition that a permission to use, so long as the mortgagor shall not sell, is a consent that he may sell.
2. The other proposition involves questions of somewhat greater difficulty, but we think that it also is untenable. However, in view of the vigor and ability with which it is supported, we deem it well to give the argument, and the authorities cited in its support, a careful and critical examination. First, however, we deem it proper to say that we are in entire accord with counsel in so far as most of their statements of the law are concerned. We agree that there is in every mortgage of chattels, where the instrument is silent on the subject, an implied agreement of the mortgagor not to sell the mortgaged property, or any part of it, without the consent of the mortgagee; that an authority to use the property, if it consists of a stock of goods, is an authority to sell in the usual course of trade, and not otherwise ; that where the mortgagor reserves the possession and use of the property without limitation, a covenant not to sell, outside of the usual course of trade, is implied; that in such case, as between mortgagor and mortgagee, the latter is bound by sales *532 made in the ordinary course of business, but is not bound by sales made otherwise ; and that while the power in the mortgagor to use the property is valid as between parties, it is void as against creditors. Inasmuch as counsel and the court are agreed upon the foregoing statements, it is unnecessary to refer to the authorities which have been cited in their support.
If the authority given the mortgagor to retain and use the property, were unaffected by any other provision in the instrument, our decision would be little more than a matter of form; but there was another provision by which the mortgagor was forbidden to sell the whole or any part of the property, and the question of its effect upon the permission given to retain and use the property, is the sole question in the case. We proceed, therefore, to an examination of the authorities with which we have been furnished, bearing upon that question.
In Bank v. Caperton, 74 Miss. 857, the mortgage contained the following provision: “ That it shall be lawful for the said mortgagor, its successors or assigns, to retain possession of the goods or chattels, and at its own expense to keep and use the same until its successors or assigns shall make default in the payment of the said sum of money above specified, either in principal or interest, at the date or times, and in the manner hereinbefore stated. And the said mortgagor hereby covenants and agrees that * * * if the mortgagor shall sell or assign, or attempt to sell or assign, the said goods or chattels, or any interest therein, * * * said mortgagee, its successors or assigns, or any of them, shall thereupon have the right to take immediate possession of said property.” Respecting those. provisions, the court, after saying that the right of the mortgagor to keep and use the property, reserved on the face of the mortgage, avoided the instrument as to creditors, spoke as follows: “ It is said that the subsequent provision that in case the mortgagor should sell or assign said property, or any interest therein, the mortgagee should take immediate possession, etc., saves the instrument. But *533 the use first referred to is clearly the usual use in the ordinary course of business ; but the latter provision relates to a selling out of the business otherwise than at retail, in such ordinary course of business, and a clause providing such selling out at retail, as usual, cannot be permitted. It would operate as a fraud on those who gave credit to the mortgagor on the faith of an apparent ownership, serving the purpose of continuous cover.”
In Walker v. Clay, 52 L. T. N. S. 369, the question was whether a purchaser from the mortgagor, of property covered by a mortgage, took a good title as against the mortgagee. In the instrument, the mortgagor covenanted that as long as any money should remain owing on the security, he would not remove any of the mortgaged property without the previous consent, in writing, of the mortgagee, except for necessary repairs. The mortgage contained the following further provision: “ And it is hereby declared and agreed by and between the said parties hereto that until default shall be made in payment of the said sum of ¿6100 and other moneys (if any) and interest contrary to the tenor and effect of the provisions hereinbefore contained, or until default shall be made in payment of the interest on any principal money due on this security or some part or parts thereof, etc., it shall be lawful for the said mortgagor, his executors and administrators, to hold, make use of, and possess the said premises hereby assigned or intended so to be without any hindrance or disturbance of or by the said mortgagee, his executors and administrators, provided that the total principal moneys shall not exceed ¿6300.” The following is the language of Lindley, J., in construing those provisions: “ The bill of sale is given as a security for a loan of money, and the object of the security is not to paralyze the trade of the grantor, but to enable him to carry on his trade, and the security would be worthless if we were to construe it so as to paralyze his trade. The covenant by the grantor not to remove any of the things comprised in the bill of sale, without the consent of the grantee, is not a covenant not to sell at all, for *534 that to my mind would he contrary to the intention of the parties, and- would destroy the value of the security. The covenant not to remove the chattels must be construed and regarded as a covenant not to remove or dispose of them otherwise than in the ordinary course of trade. Then there is a covenant that ‘ it shall be lawful for the said mortgagor, his executors and administrators, to hold, make use of, and possess the said premises hereby assigned or intended so to be without any hindrance or disturbance of or by the said mortgagee, his executors, administrators, or assigns, provided that the total principal moneys shall not exceed ¿£300.’ Taking all these provisions together, the conclusion is arrived at that the grantor is to carry on his business in the ordinary course of trade, but if he is desirous of disposing of anything in any other sense, then he is not to do so without consulting the grantee, and obtaining his consent, as if for instance he is required to move the goods into another house.”
Counsel inform us that it appears from the abstract of the record, filed in the supreme court in the case of Wilson v. Voight, supra, that the mortgage, out of which the litigation grew, contained the following provisions : “ That until default be made by the said party of the first part in the performance of the condition aforesaid, it shall and may be lawful for him to retain possession of the said goods and chattels, and to use and enjoy the same ; * * * or if the said party of the first part shall attempt to sell (or remove) the same without authority or permission of the said party of the second part in writing expressed, then it shall and may be lawful for the said party of the second part or assigns, to take immediate and full possession of the whole of said goods and chattels.” No point seems to have been made upon those provisions. They are not alluded to in the opinion, and no question of their meaning or effect was decided by the court.
We have examined all the cases cited by counsel, in which the particular question we are considering is alleged to have been involved; and we are now to see what, if any, likeness there is between them and the case at bar.
*535 In Bank v. Caperton, the mortgage made provision against the sale or assignment, or the attempted sale or assignment, of the mortgaged property, or of any interest therein. By the sale or the assignment of the whole of the property, the mortgagor would part with his entire business, and such a transaction would certainly not be in accordance with the ordinary course of business. By the sale of an interest in the property, the purchaser would acquire an ownership in every article composing it; the title to the whole would be in the vendor and the vendee jointly; and just as certainly as in the other case, the transaction would not be in accordance with the usual course of business. There was, therefore, no conflict between those provisions and the provision allowing sales in the ordinary course of business, and it was upon the harmony existing between them that the decision of the court was based.
In Walker v. Clay, the covenant of the mortgagor was not to “ remove ” any of the mortgaged property without the consent of the mortgagee, except for necessary repairs. The court held that a covenant not to remove was not a covenant not to sell; but amounted to a covenant not to remove or dispose of the property otherwise than in the ordinary course of trade. The whole decision turned upon the definition which the court placed on the word “ remove.”
The provision in the mortgage construed in Wilson v. Voight, found in the abstract filed in the ease, but not considered by the court, was directed against the sale or removal of the entire stock of goods; and we have no doubt that if it had been made the subject of consideration, the supreme court would have held that the intention was to prevent the sale of property, outside of the ordinary course of business, and was, therefore, without effect upon the authority in the mortgagor, elsewhere reserved, to use and enjoy the property.
If, in the case before us, the covenant not to sell is to be construed as a covenant not to sell except in the ordinary course of business, then, of course, it is not a limitation upon *536 the right reserved by the mortgagor to himself, to keep, retain and use the property; and the presence of that reservation, unlimited and uncontrolled, would render the mortgage void as to the creditors of the mortgagor. Let us see whether the language of this covenant will bear any such construction. The agreement was that the mortgagor would not sell or dispose of, or attempt to sell or dispose of, the mortgaged property, or any part thereof,', without the written consent of the mortgagee. It is difficult to conceive of language more comprehensive. The disposition of the goods in the usual course of trade, would be the sales of portions of them from day to day to customers. The sale of a single article, to a customer, would be the sale of a part of the property, and, consequently, a breach of the covenant. But it would be, nevertheless, in accordance with the regular course of business. The sale of the whole of the stock at once, would be contrary to such course, but not necessarily the sale of a part. The language of the covenant is sweeping. A sale outside of the ordinary course of trade, and a sale within the ordinary course of trade, are alike provided against, unless authorized by the mortgagee. Without the consent of the latter, the mortgagor had no right to sell a single article from the stock, or dispose of any part of the property, in any manner, to any person, and none of the cases to which our attention has been directed, is in point. But if the permission reserved to the mortgagor to retain and use the property, must be construed as an authority to sell the property, even in the usual course of business, then the two provisions are in direct and hopeless conflict; and the latter, being in fraud of creditors, must be disregarded, while full effect is given to the other. Crittenden v. French, 21 Ill. 598; Brown v. Slater, 16 Conn. 192; 2 Wharton on Evidence, § 1249.
But we do not think there is any inherent inconsistency between those provisions. Speaking generally, there is no use of property apart from its possession, and to sell is not to use. But because a stock of merchandise is held for the sole purpose of its sale, in order that effect may be given to an *537 authority to use the property, and in order that the obvious intention of the parties may be carried out, courts have been compelled to give the word “ use ” a signification different from that fixed by the standard lexicographers. However, where it clearly appears from the whole instrument that the parties could not have intended an authority to use to be an authority to sell, then it must be concluded that the word “ use ” was not employed in any extraordinary sense, and courts would have no right to give it a forced definition. In this case the mortgagor covenanted, in language so plain that, as it seems to us, misapprehension of its meaning is impossible, not to sell at all; and inasmuch as a permission to use is not necessarily a permission to sell, a supposition that the reservation of the use of the property was intended as a reservation of a right to violate the covenant not to sell, is not to be entertained.
A considerable amount of the property mortgaged, — but what proportion of the whole, we are not advised, — consisted of articles which were not merchandise, which were not held for the purpose of sale, and the use of which was incompatible with their sale. The policy of the law is to uphold contracts, — not to destroy them, — and if any definite idea was intended to be conveyed by the word “ use,” for the purpose of giving the mortgage the effect contemplated by the parties, the application of the word must be confined to the articles of which we have spoken. They could be used^ without detriment to creditors, and a supposition that it was their use which the mortgagor intended to reserve, would be consistent with the language employed, and harmonize all the provisions of the mortgage. But speculation is needless, for upon an examination of the whole instrument, it is clear to our minds that whatever meaning was attached to the word “use,” it was not intended to import a privilege to sell.
Let the judgment be reversed.

Heversed.